UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-14005-T/P-GRAHAM/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES SAWYER,

    Defendant.
_____/



FILED by _____ D.C.

JUN 13 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON EVIDENTIARY HEARING ON PETITION ALLEGING VIOLATIONS OF SUPERVISED RELEASE

**THIS CAUSE** having come on to be heard on June 13, 2014 for a final evidentiary hearing in respect to the pending Petition Alleging Violations Of Supervised Release and this Court having received evidence and arguments of counsel recommends to the District Court as follows:

1. The Petition dated March 13, 2014 alleges three violations of supervised release as follows:

| | |
|---|---|
| **Violation Number 1** | **Violation of Mandatory Condition**, by failing to refrain from a violation of the law. On or about July 1, 2009 through August 31, 2013, in St. Lucie County, Florida, the defendant did commit the offense of public assistance fraud, contrary to Florida Statute 414.39. |
| **Violation Number 2** | **Violation of Mandatory Condition**, by failing to refrain from a violation of the law. On or about July 1, 2009 through August 31, 2013, in St. Lucie County, Florida, the defendant did commit the offense of theft, robbery, and related crimes, contrary to Florida Statute 812.014(1)(b). |
| **Violation Number 3** | **Violation of Standard Condition**, by failing to notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. On or about February 28, 2014, |

the defendant was arrested by the Port Saint Lucie County Sheriff's Office, in Saint Lucie County, and he failed to advise the U.S. Probation Officer.

2. At the outset of the evidentiary hearing, counsel for the Defendant, AFPD Peacock, stated that the Defendant had no objection to the government proceeding by way of proffer and that the Defendant would stand mute as to the violations alleged in the Petition. The Court questioned the Defendant and he acknowledged that he agreed with this procedure. It is noted that the conduct alleged in the Petition stems from new criminal conduct which is still pending in the State Circuit Court in Fort Pierce, Florida.

3. AUSA Lineberger proffered that during the period of July 1, 2009 through and including August 13, 2013, the Defendant failed to report his actual employment status to the Florida Department of Children and Families. Further, he failed to advise that agency that he was the sole member of his household. The Defendant purportedly filed applications for welfare benefits alleging that he was unemployed. During this period of time, the Defendant was in fact employed by Sears, Dunkin' Donuts, and the Coca Cola Company.

4. The Florida Department of Financial Services conducted an investigation and found that the Defendant did not report his employment to the Department of Children and Families as required and that the benefits he received were fraudulently obtained by him. It is also noted that the applications for these state benefits were filed by the Defendant in St. Lucie County, Florida.

5. USPO Rita Ramos and Ms. Preuss, the criminal investigator for the State of Florida, were both present at this hearing and available for cross-examination by counsel for the Defendant.

6. On or about December 2, 2013, Ms. Preuss interviewed the Defendant. The Defendant admitted to her that he had filed two or three requests for assistance and did receive benefits dating back to 2009. The Defendant purportedly advised Ms. Preuss that he understood he was to report his employment and income and did not do so. The Defendant told Ms. Preuss that he thought that the Department of Children and Families simply processed these applications filed by him. He failed to report his work during those periods at various times for Sears, Dunkin' Donuts and Coca Cola as referenced above. He told Ms. Preuss that he did not report this employment because "no one asked him." The Defendant acknowledged to Ms. Preuss that he received all the benefits himself and that he used his mother's address on 29th Street in Fort Pierce. The Defendant received in excess of $7,000.00 in benefits to which he was not entitled according to the government's proffer. The exact amount placed on the record was $7,083.00 according to the State of Florida records.

7. The aforementioned evidence was in respect to Violations Numbers 1 and 2 set forth in the Petition. In respect to Violation Number 3, the government proffered that the Defendant was arrested on state charges which are still pending in the state court as referenced above. Those charges which culminated in his arrest on or about February 28, 2014 gave rise to the underlying violations set forth in paragraphs 1 and 2 of the Petition in this case. The government alleges that the Defendant did not notify his U. S. Probation Officer Rita Ramos within 72 hours of his arrest on those charges.

8. AFPD Peacock requested to cross-examine USPO Rita Ramos who was present at the hearing. USPO Ramos testified that on or about February 28, 2014 she received an email alert that the St. Lucie County Sheriff's Office had "run information on the Defendant." This email was sent to USPO Ramos automatically as is done when any law enforcement agency makes an inquiry of someone who is being supervised by the United States Probation Office.

9. Ms. Ramos later found out the Defendant was in fact arrested by the St. Lucie County Sheriff's Office at approximately 3:16 a.m. on February 28, 2014. However, when USPO Ramos received the email alert, she contacted the St. Lucie County Sheriff's Office but could not reach anyone to give her information concerning the Defendant, i.e., whether or not he had been arrested or why the email alert seeking information from the Defendant had been sent to her. Ms. Ramos simply left a message for the appropriate individual at the St. Lucie County Sheriff's Office to return her call.

10. While waiting to receive a call back from the St. Lucie County Sheriff's Office, USPO Ramos called the Defendant later on February 28, 2014. She asked him if he had any contact with law enforcement. The Defendant stated that he had been pulled over by law enforcement and questioned. However, he did not tell USPO Ramos that he had in fact been arrested. The next contact that the U. S. Probation Office had with the Defendant is when the Defendant reported to USPO Hogan on March 20, 2014 at the offices of the U. S. Probation Office.

11. USPO Ramos clarified that when she called the Defendant on February 28, 2014 she had not yet received a return call from the St. Lucie County Sheriff's Office.

Therefore, she was not sure what the underlying reason was as to why she had received an email concerning information being run on the Defendant.

12. USPO Ramos testified that one of the standard conditions of the Defendant's supervised release was that if he was charged with any offense, even a traffic violation, that he was to notify his probation officer within 72 hours. The Defendant has never done that according to USPO Ramos. She only found out about his arrest by doing further research and learning of the arrest. When the Defendant came in to meet with USPO Hogan, that was when he was given the original summons in respect to this Petition Alleging Violations of Supervised Release.

13. On cross-examination, USPO Ramos denied that she ever asked the Defendant if he in fact had been arrested on February 28, 2014. She only asked if he had had any contact with law enforcement. Once again, the Defendant only stated that he had been pulled over by law enforcement. He made no mention of his arrest on that date.

14. AFPD Peacock did inquire of USPO Ramos as to whether or not she ever told the Defendant that his supervised release was terminating in January of 2014. Ms. Ramos explained that the Defendant's supervised release was originally to terminate in January of 2014. However, in 2011, the Defendant had been arrested for domestic battery and the time that he was in jail tolled the running of his supervised release. Therefore, his supervised release was extended until March of 2014, which includes the time during which he was arrested on the state charges on February 28, 2014.

15. USPO Ramos denied ever telling the Defendant near the end of 2013, that his supervised release was due to terminate in January of 2014. USPO Ramos testified that in fact, she made it clear to the Defendant well before the end of 2013 that his

supervised release was extended until March 2014 based upon his domestic battery arrest in 2011.

16. It was at this point during the hearing that AFPD Peacock stated that he wanted to have the U. S. Probation Office produce any records it may have had as to the exact date that the Defendant was told that his supervised release was in fact extended to March of 2014. USPO Ramos did not have that information in her file at the hearing. AFPD Peacock made it clear that he was not asking this Court to defer ruling on the evidence presented in respect to this hearing nor was he asking for a continuance of the hearing. He clarified his request and stated that he would like to review the U. S. Probation Office records and raise this issue at the time of sentencing before the District Court, if appropriate.

---

17. The Defendant presented no witnesses, evidence, or argument at the evidentiary hearing. Further, neither the government nor the Defendant called Ms. Preuss of the State of Florida to testify.

## ANALYSIS

18. Based upon the evidence presented to this Court, the government has sustained its burden of proving by a preponderance of the evidence each of the three violations set forth in the Petition. The government has established that on or about July 1, 2009 through August 31, 2013 that the Defendant obtained public benefits from the State of Florida while he was employed and that he failed to properly advise the State of

Florida of his employment and income. These factors, which the Defendant did not disclose to the State of Florida representatives, would have affected his ability to receive and his entitlement to such benefits. The government has established that the amount of benefits the Defendant received improperly total $7,083.00.

19. In respect to Violation Number 2, this Court finds that the government has sustained its burden to prove by a preponderance of the evidence that during that same time period of July 1, 2009 through and including August 31, 2013, in St. Lucie County, Florida, the Defendant did in fact unlawfully take the property, i.e., money by way of benefits provided to him by the State of Florida. This Court points out that the word "robbery" is included in Violation Number 2. However, there is no reason as to why that word was included within that violation. There is no evidence that the Defendant committed any robbery. Rather, the evidence received by this Court supports the government's argument that the Defendant committed theft by accepting benefits that he knowingly had applied for and to which he was not entitled.

20. In respect to Violation Number 3, this Court finds that the Defendant never advised his U. S. Probation Officer that he had in fact been arrested or questioned by law enforcement. He did tell USPO Ramos that he had been "pulled over" by law enforcement on February 28, 2014, but neglected to advise her that he had in fact been arrested. As USPO Ramos testified, one of the standard conditions of supervised release in this case was that the Defendant had to report to his U. S. Probation Officer within 72 hours any contact with law enforcement or if he was charged with any offense, including even a traffic offense. The contact between USPO Ramos and the Defendant occurred at the initiation of USPO Ramos investigating why she had received an email alert from the St. Lucie

County Sheriff's Office regarding this Defendant. During that telephone contact, the Defendant did say that he had been pulled over, but never stated the reasons why nor that he had been in fact arrested. This Court finds that the Defendant's failure to truthfully advise USPO Ramos of his contact with law enforcement violated the standard condition of supervised release. His admission that he had been "pulled over" upon being called by his U. S. Probation Officer does not satisfy his obligations under his conditions of supervised release.

21. The Defendant has inferred that he believed he was no longer on supervised release after January 2014. This Court has received no evidence in that regard. This Court understands AFPD Peacock's argument, but there is no evidence before the Court to support that argument at this point. The only evidence this Court received was from USPO Ramos who testified that she clearly advised the Defendant prior to the end of 2013 that his supervised release would not terminate until sometime in March of 2014 due to his time being tolled while in custody in 2011 on state domestic battery charges. Therefore, this Court finds that the government has sustained its burden of proving by a preponderance of the evidence that the Defendant did not contact his U. S. Probation Officer and advise her of his arrest on state charges which occurred in the early morning hours of February 28, 2014.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have violated his supervised release consistent with this Court's findings and the evidence received by this Court during the final evidentiary hearing. Further, this Court recommends that the District Court set a sentencing hearing at its earliest convenience for final disposition of this matter.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this 13th day of June, 2014, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Donald L. Graham
AUSA Carmen Lineberger
AFPD Fletcher Peacock
Pretrial Services
U. S. Marshal